Approved: ________________________________
ANDREW JONES / CHRISTY SLAVIK
Assistant United States Attorneys

Before: THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

22 MAG 6620

UNITED STATES OF AMERICA

- v. -

CESAR VASQUEZ,
a/k/a "Aguila,"
a/k/a "Primo," and

MICKY COLON,

Defendants.

**COMPLAINT**

Violations of:
18 U.S.C. §§ 922, 924, & 933;
21 U.S.C. § 846

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

RANDY TAVERAS, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
(Firearms Trafficking Conspiracy)

1. From at least on or about June 25, 2022, until at least in or about August 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to traffic in firearms, in violation of Title 18, United States Code, Section 933.

2. It was a part and an object of the conspiracy that CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, and others known and unknown, would and did ship, transport, transfer, cause to be transported, and otherwise dispose of a firearm to another person in or otherwise affecting interstate commerce, and did so knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by

the recipient would constitute a felony as defined in Title 18, United States Code, Section 932(a).

(Title 18, United States Code, Section 933(a)(3).)

**COUNT TWO**

(Firearms Trafficking)

3. On or about July 6, 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," the defendant, did ship, transport, transfer, cause to be transported, and otherwise dispose of a firearm to another person in or otherwise affecting interstate commerce, and did so knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by the recipient would constitute a felony as defined in Title 18, United States Code, Section 932(a), to wit, VASQUEZ sold numerous firearms, including assault rifles and firearms with large capacity magazines, to a purchaser in the Bronx, New York.

(Title 18, United States Code, Sections 933(a)(1), and 2.)

**COUNT THREE**

(Attempted Firearms Trafficking)

4. On or about August 11, 2022 in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, did ship, transport, transfer, cause to be transported, and otherwise dispose of a firearm to another person in or otherwise affecting interstate commerce, and did attempt to do the same, and did so knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by the recipient would constitute a felony as defined in Title 18, United States Code, Section 932(a), to wit, VASQUEZ and COLON sold and attempted to sell numerous firearms, including assault rifles and firearms with large capacity magazines, to a purchaser in the Bronx, New York.

(Title 18, United States Code, Sections 933(a)(1), 933(a)(3), and 2.)

**COUNT FOUR**

(Transfer of a Firearm for Use in a Felony and a Drug Trafficking Crime)

5. On or about July 6, 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," the defendant, did knowingly transfer a firearm, knowing

and with reasonable cause to believe that the firearm would be used to commit a felony and a drug trafficking crime, to wit VASQUEZ sold numerous firearms, including assault rifles and firearms with large capacity magazines, along with methamphetamine, to a purchaser in the Bronx, New York.

(Title 18, United States Code, Section 924(h) and 2.)

**COUNT FIVE**

(Attempted Transfer of a Firearm for Use in a Felony and a Drug Trafficking Crime)

6. On or about August 11, 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, did knowingly transfer a firearm, and did attempt to do the same, knowing and with reasonable cause to believe that the firearm would be used to commit a felony and a drug trafficking crime, to wit, VASQUEZ and COLON sold and attempted to sell numerous firearms, including assault rifles and firearms with large capacity magazines, along with fentanyl, to a purchaser in the Bronx, New York.

(Title 18, United States Code, Section 924(h) and 2.)

**COUNT SIX**

(Unlicensed Firearms Dealing)

7. From at least in or about June 2022 until at least in or about August 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business did ship, transport, and receive firearms in interstate and foreign commerce, to wit, VASQUEZ and COLON illegally sold firearms in the Bronx, New York.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), and 2.)

**COUNT SEVEN**

(Interstate Transportation and Distribution of Firearms)

8. From at least in or about June 2022, until at least in or about August 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, not being a licensed importer, licensed

manufacturer, licensed dealer, and licensed collector of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly did transfer, sell, trade, give, transport, and deliver a firearm to another individual, said person not being a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms within the meaning of Chapter 44, Title 18, United States Code, and knowing and with reasonable cause to believe that said person was not then residing in Ohio, the State in which the defendants were then residing, to wit, VASQUEZ and COLON resided in Ohio and traveled, from Ohio, to the Bronx, New York, where they sold firearms.

(Title 18, United States Code, Sections 922(a)(5), 924(a)(1)(D), and 2.)

**COUNT EIGHT**

(Narcotics Trafficking Conspiracy)

9. From at least in or about June 2022 until at least in or about August 2022, in the Southern District of New York and elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

10. It was a part and an object of the conspiracy that CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

11. The controlled substances that CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, conspired to distribute and possess with intent to distribute were (i) 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(B); and (ii) mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

**COUNT NINE**

(Firearms Use, Carrying, and Possession)

12. From at least in or about June 2022 until at least in or about August 2022, in the Southern District of New York and

elsewhere, CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics trafficking conspiracy charged in Count Eight of this Complaint, knowingly did use and carry firearms, and, in furtherance of such crime, did possess firearms during the narcotics trafficking conspiracy charged in Count Six of this Complaint, and did aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

13. I am a Special Agent with the DEA and am assigned to the New York Organized Crime Drug Enforcement Strike Force. I have been personally involved in this investigation. This affidavit is based on my investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Overview of the Investigation

14. Based on my training and experience, my participation in this investigation, including my personal observations, my conversations with undercover law enforcement agents ("UC-1" and "UC-2"), my conversations with a confidential source working at the direction of law enforcement ("CS-1"),[1] my review of materials provided by UC-1, UC-2, and CS-1, including recordings of the communications described below, my conversations with other law enforcement agents, and my review of law enforcement reports and records, I have learned the following, among other things:

[1] CS-1 has been providing information to law enforcement since in or about 2016. CS-1 is providing information to law enforcement in exchange for immigration benefits. Information provided by CS-1 has been found reliable and has led to multiple seizures of narcotics and firearms.

a. Since at least in or about June 2022, law enforcement agents have been investigating a group of gun and narcotics traffickers based in the Columbus, Ohio area that are selling guns and narcotics in New York City. During the course of the investigation, undercover law enforcement agents have communicated with CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," the defendant, and others of his co-conspirators by phone, text message, and audio/video message. VASQUEZ and his co-conspirators, including MICKY COLON, the defendant, have agreed to sell the undercover agents guns and narcotics, which were then transported from Ohio to New York, where they were sold.

b. In a series of five transactions between on or about June 4, 2022, and on or about August 11, 2022, VASQUEZ, COLON, and their co-conspirators sold law enforcement agents approximately 51 firearms, approximately 196 grams of methamphetamine, and a "sample" of fentanyl as a precursor to later fentanyl transactions. Included in the firearms that VASQUEZ and his co-conspirators sold were more than a dozen assault rifles; other military-style weapons, including a semiautomatic shotgun and assault-type weapons that fire pistol rounds; and numerous handguns. The specific transactions are described further, below.

<u>The Gun and Narcotics Sales</u>

c. On or about June 4, 2022, two individuals ("CC-1" and "CC-2") met with CS-1 in the Bronx, New York. Prior to the meeting between CC-1, CC-2, and CS-1, CS-1 had communicated with CC-2 about purchasing two firearms, and law enforcement agents had provided CS-1 with $2400 to purchase the two firearms. Law enforcement agents observed CC-1 and CC-2 arrive at the meeting location in a sedan that had Ohio license plates. Prior to the meeting, CC-2 had communicated to CS-1 that it would take CC-2 approximately five hours to drive from Ohio to the meeting location in the Bronx. During the meeting, CC-2 handed CS-1 two handguns that were wrapped inside a black t-shirt, and CS-1 gave CC-2 approximately $2400 in exchange.

d. The two firearms CC-1 and CC-2 sold on or about June 4, 2022 were: (1) a .45 caliber semiautomatic handgun with an extended, 27-round magazine and a standard magazine; and (2) a .45 caliber semiautomatic handgun with a standard magazine. A photograph of those firearms is below.



e. Following the purchase of two firearms on June 4, 2022, CS-1 remained in contact with CC-1 and CC-2. On or about June 17, CC-1 sent CS-1 a video showing firearms that would be brought to New York for sale. The video appeared to show multiple handguns, rifles, extended magazines, and rounds of ammunition. A still image from the video CC-1 sent CS-1 is below.



f. In later communications with CS-1 on or about June 17, 2022, CC-1 identified an Instagram username that contained the alias "aguila" as belonging to CC-1's cousin, who was described as a person who could help supply firearms directly to CS-1.

g. On or about June 17, 2022, CC-2 contacted CS-1 and shared an image of a GPS map that indicated CC-2 was driving from Ohio to New York and would arrive in New York in the afternoon/evening. Later on June 17, 2022, law enforcement agents observed CC-2 arrive at a location in the Bronx driving a sedan with Ohio license plates. CS-1 and UC-1 met with CC-2, and CC-2 removed a black duffle bag from his sedan and placed it in a car that belonged to UC-1. UC-1 paid CC-2 approximately $12,050 for the firearms inside of the duffle bag.

h. The firearms CC-2 sold on or about June 17, 2022 were: (1) a 9mm semiautomatic handgun; (2) a 9mm semiautomatic handgun; (3) a .40 caliber semiautomatic handgun; (4) a .45 caliber semiautomatic handgun; (5) a .45 caliber AR-style semiautomatic pistol; and (6) a 5.56mm AR 15-style assault rifle. In addition to the firearms, numerous magazines, including extended and large-capacity magazines, were sold.

i. Five of the six guns that CC-2 sold UC-1 and CS-1 on June 17, 2022, appear to be the same firearms in the video that CC-1 sent CS-1 earlier that day. A photograph of the firearms that CC-2 sold on or about June 17, 2022 is below.



j. On or about June 22, 2022, CC-1 contacted CS-1 and stated, in substance and in part, that CC-1 was preparing to sell five rifles and five handguns to a buyer in Brooklyn, New York. CS-1 offered to buy the guns instead and asked CC-1 to sell CS-1 a narcotics sample as well. CC-1 agreed. On or about June 22, 2022, around 10:20PM, CC-1 informed CS-1 that CC-1 and someone that CC-1 identified as "Primo" were on their way from Ohio to the Bronx to sell CS-1 the firearms and narcotics.

k. On or about June 23, 2022, around 5:00AM, CC-1 and a second person, who was later identified VASQUEZ, the defendant, arrived in a car with no license plates at a meeting location in the Bronx. CC-1 and VASQUEZ were driven by a third person, who was subsequently identified as MICKY COLON, the defendant. During a meeting with UC-2, CC-1 referred to VASQUEZ as "Primo" and "Aguila." After VASQUEZ, COLON, and CC-1 arrived in the Bronx, VASQUEZ and CC-1 met with UC-2 and CS-1. VASQUEZ went to the trunk of the car, retrieved the firearms, and brought them inside the car belonging to UC-2. UC-2 gave CC-1 approximately $21,300, but CC-1 returned approximately $1400 because CC-1 and VASQUEZ had brought only nine firearms, instead of ten. CC-1 provided CS-1 and UC-2 a quantity of what appeared to be crystal methamphetamine, wrapped inside a small white plastic bag. The weight of the crystal methamphetamine was later determined to be approximately 10 grams. Before VASQUEZ, COLON, and CC-1 left, VASQUEZ and CC-1 discussed future firearms sales with CS-1 and UC-2.

l. The firearms sold by VASQUEZ, COLON, and CC-1 on about June 23, 2022, were: (1) a 9mm semiautomatic handgun; (2) a 9mm semiautomatic handgun; (3) a 9mm semiautomatic handgun; (4) a .357 caliber revolver; (5) a 5.56mm AR 15-style assault rifle; (6) a 5.56mm AR 15-style assault rifle; (7) a 5.56mm AR 15-style assault rifle; (8) a 7.62mm AK 47-style assault rifle; and (9) a 7.62mm AK 47-style assault rifle. In addition to the firearms, several magazines, including extended and large-capacity magazines, were sold. A photograph of the firearms that VASQUEZ and CC-1 sold on or about June 23, 2022 is below.



m. On or about July 5, 2022, VASQUEZ contacted UC-1 and told UC-1, in substance and in part, that VASQUEZ and CC-1 were preparing to travel from Ohio to New York and that VASQUEZ and CC-1 would bring with them, eight handguns, three assault rifles, and five ounces of crystal methamphetamine to sell to UC-2. UC-2 agreed to pay $22,500 for these items.

n. On or about July 6, 2022, VASQUEZ and CC-1 arrived in the Bronx at a prearranged meeting location in a sedan with Ohio license plates that was driven by a third person. VASQUEZ, CC-1, and UC-2 met inside UC-2's car. UC-2 gave CC-1 the money for the transaction, which CC-1 counted, and VASQUEZ and CC-1 gave UC-2 the firearms and crystal methamphetamine. The crystal methamphetamine was wrapped in a white plastic bag and later found to weigh approximately 186 grams.

o. The firearms VASQUEZ and CC-1 sold on about July 6, 2022, were: (1) a .45 caliber semiautomatic handgun; (2) a 9mm semiautomatic handgun; (3) a .40 caliber semiautomatic handgun; (4) a .380 caliber semiautomatic handgun; (5) a .40 caliber semiautomatic handgun; (6) a .40 caliber semiautomatic handgun; (7) a 9mm semiautomatic handgun; (8) a 9mm semiautomatic handgun; (9) a 5.56mm AR 15-style assault rifle; (10) a 5.56mm AR 15-style assault rifle; and (11) a 5.56mm AR 15-style assault rifle. In addition to the firearms, several magazines, including extended and large-capacity magazines, were sold. A photograph of the firearms that VASQUEZ and CC-1 sold on or about July 6, 2022 is below.



p. On or about July 12, 2022, VASQUEZ sent UC-2 a video showing additional firearms that VASQUEZ would sell to UC-2. The video shows a collection of assault rifles, shotguns, and handguns, high-capacity magazines, and ammunition. Two still images showing many of the firearms in the video are below.




q. On or about August 10, 2022, VASQUEZ informed UC-2, in substance and in part, that VASQUEZ would sell UC-2 additional firearms in the Bronx, on or about August 11, 2022. Also, on or about August 10, 2022, VASQUEZ informed UC-2, in substance and in part, that VASQUEZ would sell UC-2 a sample of fentanyl. Also, on or about August 10, 2022, VASQUEZ sent UC-2 a video showing additional firearms that VASQUEZ would sell UC-2. A still image from that video is below.



r. On or about August 10, 2022, VASQUEZ and COLON were observed carrying bags that were later found to contain firearms and fentanyl out of an apartment building in Columbus, Ohio and loading the bags into a car. Photos below show COLON (in the green shirt) and VASQUEZ (in the black shirt) handling the bags of guns.




s. On or about August 11, 2022, at approximately 2:20 AM, VASQUEZ, COLON, and CC-1 arrived in the Bronx at a prearranged meeting location in a sedan with expired Illinois temporary license plates. The car was driven by COLON. After the car arrived at the location, law enforcement agents approached the car and arrested VASQUEZ and COLON. The car was seized and searched in conjunction with the arrest. During the search of the car's trunk, agents found a large, rolling duffle bag. Packed inside of the duffle bag were multiple firearms and a quantity of a powder substance whose appearance is consistent with fentanyl. Also inside of the trunk were two additional long guns packed inside of bags designed to hold folding chairs.

t. In total VASQUEZ, COLON, and CC-1 brought approximately 23 firearms to the Bronx on or about August 11, 2022 that were seized by law enforcement agents. These guns included: 13 semiautomatic handguns; four 5.56mm AR 15-style assault rifles; two 7.62mm AK 47-style assault rifles; one AR-style semiautomatic shotgun; two pump-action shotguns; and one assault weapon-style firearm with a folding buttstock that fires pistol ammunition. In addition to the firearms, several magazines, including extended and large-capacity magazines, were found in the bags. A photograph of the firearms that VASQUEZ, COLON, brought from Ohio to the Bronx, on or about August 11, 2022, is below.



WHEREFORE, I respectfully request that CESAR VASQUEZ, a/k/a "Aguila," a/k/a "Primo," and MICKY COLON, the defendants, be imprisoned or bailed, as the case may be.

S/ by the Court with permission
Randy Taveras
Special Agent
Drug Enforcement Administration

Sworn to before me on
August 11, 2022

THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK